May it please the Court, Vivian Fug for Petitioner Appellant Gregory Barnes. I'd like to reserve three minutes for rebuttal. With the Court's permission, I'd like to start with the Batson claim. In this case, at least four out of seven Hispanic potential jurors were struck by the prosecution during voir dire. An additional Hispanic potential juror was excused by the Court. The sole African-American potential juror was also excused. And this Court has previously held in Paulino v. Castro, Turner v. Marshall, and Williams v. Runnels that a defendant can make a prima facie case based on statistical disparity alone. I need you to help me to go through what the actual record is, because let me tell you how I read it and see if you can correct me. The colloquy that we're worried about occurred on the second day of jury selection? Yeah, it appears so. Okay. And so the focus in the defense counsel's arguments were only about that particular day. And as I understand it, defense counsel, and they were sort of tag-teaming this. I've read the excerpt of the record. Defense counsel comes in and says, Your Honor, after court ended yesterday, we had a concern. And the concern is we think that there were seven available Hispanic jurors, and that they were all knocked out. But one counsel says, But I don't have the exact names, so I want to defer to the other counsel. I then see the other counsel identify five, five specific ones. The judge says, Well, one was excused by stipulation, so that takes us down to four. One lied to the court, You're not really making a Wheeler claim about that person. And the counsel said, No, we're not. We're not making a Wheeler claim as to that person. So now we have three, three people that are identified as Hispanic. And the judge says, These people have already been sent home because they've been excused the previous day. The judge says something like, Well, I don't think that constitutes a valid Wheeler claim, but we're doing more jury selection tomorrow, today. We've brought in a new, fresh panel, and let's watch this, and if you want to renew the motion, I can review it at the end of that. Is that a fair summary of what happened with respect to those jurors? Well, the judge said more something like, I think you're making up issues for us. Right, but I guess my question is, I can't figure out how we get to six or seven, because somebody says six or seven, but when the judge says, Tell me who, they only name five, and two of them were excused either by stipulation or as to the one who the judge says lied to the court. Counsel say, No, we don't have a Wheeler claim as to that person. So it's really only three people on that day that you're focusing on, isn't it? It's three, but I would include the fourth. The court says that he didn't appear to be Hispanic to me. But the defense counsel thought that he was Hispanic. But here we are on habeas. This issue, that's an issue that was never raised on appeal, correct? No, it was raised in the state habeas petition. Raised in the state habeas petition, denied by a postcard. Right, correct. Could the California Supreme Court have said, Gee, you never raised these issues on appeal. We're not going to consider them on habeas. I know we treat a postcard denial as exhaustion, but wouldn't it have been rational for the California Supreme Court to have said, We're not going to treat these claims on habeas. You never even raised them on appeal. Well, there was no requirement for him to raise them on appeal. Well, the California Supreme Court had issued a decision that said, You never raise these arguments on appeal. They are procedurally barred. Would they have been wrong? Well, they didn't do that. I understand. I mean, here's my difficulty with the case. I just want to, what we have on the day, the only transcript we have, suggests that there may have been three Hispanic jurors that weren't really challenged on a day where there were six or seven. We don't know how many there were on the first day. We don't know how many there were on the third day. We don't know the composition of the veneer. We don't know. This is all we know. And here we are in a habeas, these issues never having been explored on two direct appeals, and you're asking us to do what? To get the information that's necessary to actually look at this claim properly, pursuant to Batson, Miller, Al, Johnson v. California. I think that just based on the numbers alone, when defense counsel says, okay, three or four or whatever out of the seven Hispanic jurors and the sole African-American juror. Well, as the African-American, there's no certificate of appealability on that issue, right? No, when we asked to expand it. And as I read the record on the African-American juror, the judge says, and the record's not all that clear, gee, you know, I did this yesterday for you guys. I did the Wheeler thing yesterday for you guys, and we turned out the guy had sleep apnea. Isn't that a sufficient record? It looks like they made a Batson claim, and the judge turned him down because there was a valid reason the juror had sleep apnea. Well, I think part of what Batson says, too, is to look at the totality of the circumstance. And I think that if there weren't race-neutral reasons to strike the African-American juror, you'd have to look at that in connection with the striking of the Hispanic potential jurors. But we do have a race-neutral. The judge appears to say, I followed. But it's unclear. I mean, the judge is throwing out a lot of stuff. I mean, without a transcript of the WIDEAR, I think it's impossible for, I think it was objectively unreasonable for the state court to deny his Batson claim without. On habeas. On habeas, without a transcript. Are we to order the California Supreme Court to get a transcript? No, I think that this court should send it back to the district court for an evidentiary hearing, and the district court can supplement the record with the documents necessary. So the error that you think that occurred in this case was that the district court denied the petition without ordering an entire transcript to review? Well, I think the district, I mean, I'm sorry, the state court, by not finding a prima facie case based on the statistical disparity alone, I mean, the standard for the first step of Batson, you know, pursuant to Johnson v. California is not meant to be onerous. It's meant to be pretty low. And based, and this court has held that, you know, statistical disparity can get you to that point. And given, since all we have here are the numbers of the, you know, three or four Hispanics, the sole African-American, which is also almost exactly like, I think it's Fernandez v. Roe, where this court determined that that did establish a prima facie case. Now, I'm just, and my question was a little bit more specific. We're here on habeas. Let's assume we agree with you that you're entitled to relief. What relief should we order? What should the last line in our opinion say? I think that it should go back, at a minimum, to the district court for an evidentiary hearing to supplement the record, and where, you know, all the information that's necessary to do a comparative analysis and, you know, get the jury questionnaires and the transcript of the body, all the information that the state court should have looked at. So your position is that the California Supreme Court on habeas, because that's the decision you're attacking. Yes. The California Supreme Court on habeas should have ordered up the transcripts, the entire record, and reviewed it. Well, based on, well, one, because he did establish a prima facie case. No, I understand. Yes. Let's assume you're right that he established a prima facie case. Yes, and so given, if we assume that he established a prima facie case, they should not have denied his claim without looking at the entire picture. And how do we know they didn't look at the entire picture? Because there's no transcript of the voir dire. It's not in the record. Right, but how do we know? Did you order, did your client ask for a transcript? Well, it wasn't, the client would pro se on habeas. I mean, it's different from Boyd in the sense where there was a request for a transcript and the state court said no. He did make a request to the California Superior Court for what he, quote, all trial records, evidence, and exhibits, I think, and if you construe that liberally as a pro se petitioner. See, I guess what I'm focusing on, and I need you to help me on it, is this. I used to be a state Supreme Court justice, so I'm putting myself in the position of the California State Supreme Court justices who get a pro se petition, and you're saying they made a mistake. That's the unreasonable decision of state law that you're asking us to deal with because you're, because, right? That, I'm sorry. You're saying that they made a mistake in denying habeas. That's the decision that you. California State Supreme Court. Yes. Yes. Okay, so, and what, and you're telling, what should they have done? Well, actually. Tell me precisely what they should have done. Let me go back. So, it's not that, it's basically there's not enough information. They made a mistake in denying habeas without having the record that they need before them to make a proper decision. Even though the defendant in his habeas didn't say, one of the things I want you to do is order the preparation of a transcript. Well, he made the Batson claim. I mean, and so, and given that he's pro se, he made the Batson claim, it should have been pretty clear to the state Supreme Court that in order to look at the Batson claim, you need the transcript of the voir dire, which is essentially what this Court was saying in Boyd. Well, except that what you're asking for is a sua sponte duty as opposed to a denial of request for a transcript. Well. And to say that it's unreasonable for the state court to make a Batson, turn down a Batson claim without sua sponte ordering a transcript. No, not in every Batson claim. That's not what we're saying. We're saying in this particular Batson claim, because the numbers, because based on the numbers alone, he made a prima facie case. I understand that part of your argument, but I mean, to me, Boyd is slightly different, because there's a specific request for a transcript, and the state courts say no. Here, he makes a Batson claim, and they say, where's your evidence? And he presents this, and that's that. I mean, the two situations are somewhat distinct, because petitioners do have a duty to develop the record. And in Boyd, he tried to develop the record, and the state court prevented him from developing the record. Well, I think that once he's made the prima facie case, the burden really shifts to the state to come up with the evidence. And the state, in this case, I guess, being the state. Well, in a trial, but not necessarily on appeal. A ticket to habeas doesn't make the claim that appellate counsel or trial counsel were ineffective for not developing or urging the Batson claim. He makes several claims on ineffective assistance. Yeah, and I read it, but it doesn't seem to be. The Batson claim seems to be freestanding. It appears that way. Well, let me ask you this, and it was provoked by your earlier colloquy. Was there really an objection made? A Wheeler objection? Yes. Well, here's what it says. We're approaching a Wheeler-type situation. I'm not sure as a trial judge I'd know what to do with that, except to do what this judge said. Well, okay. Well, what do you have? And they list a few, and he says, well, this out, this out, so you've got a few. And he said, well, let's see where it takes us tomorrow. And then there's nothing else, right? Well, we don't know if there's anything else because there's no, I mean, there's just nothing to go on. Well, no, but my question is not the ultimate issue in Batson, but whether or not the counsel actually preserved the Batson challenge. Well, I think I would argue that he did preserve the Batson challenge. Do you have a case that's close to say when he says we're approaching a Wheeler-type situation? Well, he did, well, also the trial judge actually ruled on it and said, I'm not going to find a premium-featured case. Well, but the jurors had already gone home, hadn't they? This was the next day. The jurors had been excused the day before with no objection by the defense, correct? I think so, yes. So what was the judge to do the next day? What was the judge to do? Well, he could have looked at. What relief? I guess what relief could he give the defendant the next day? He could declare a mistrial, I suppose. He could have started over, yes. But they didn't ask for that. Well, because he denied the premium-featured case. I think that stopped them. No, but I guess my question is had they been successful in front of the judge, what should he have done? He couldn't get these jurors back. He might have asked the prosecutor for his reasons, and as I read the record, defense counsel in sort of a burst of candor say, we kind of think there are good reasons as defense counsel. We could see them. But we think we're approaching one of those situations, and we think that we need to bring it to the attention of the court. Is that really a Batson motion? Well, I mean, defense counsel could have been more direct in their motion, but I think that he did preserve the claim, and he did say we have a Wheeler situation, and he gave the factual basis. He said, you know, we think all of the Hispanic potential jurors have been struck by the prosecutor. It's a lot. I mean, he says we're commenting on it. It might be a Wheeler-type situation. And he goes on to say, I don't know. The court says, I don't know what's coming. And he says, I know that as well. Now, we should have commented on it when a pattern developed, and the prosecutor can tell us the names because he's the one who made the observation. So I wanted to bring it to the court's attention. I'm skipping some words here so it doesn't get perpetuated. And then the co-counsel says, okay, what are the names? And he says, well, he didn't prove Hispanic. That guy lied. And the third one is excused by stipulation. And he says, well, I'm just putting it out there sort of. I'm not sure. I mean, that's certainly not a typical Batson challenge. Yeah, he could have done it, you know, more directly and more forcefully, but I think that's enough to preserve his claim. And then the court did take it as a Wheeler motion and say, you know, I think you guys are just trying to make up issues for the appeals court, and I'm not even going to find a prima facie case. What would the transcript show? I understand what jury questionnaires might show, and I take it they're in the record and were available to the California Supreme Court. What would the transcript show? Well, the transcript would show, first of all, the colloquy with the African-American juror who was struck, which we don't know. But we do have some record on that. I think the judge makes pretty clear in the colloquy that we have that there was a Wheeler objection raised at the time. He says, I humored you guys yesterday on this old African-American juror, and we went through the process, and it turns out he had sleep apnea. So it seems to me there's a pretty clear record there that the juror was challenged, that the challenged juror was preemptively challenged by the state, the defense objected, and the judge found a non-pretextual reason because he had sleep apnea. What more do we need on that one? Well, it's unclear when that information came out either. I mean, if that information came out after the prosecution struck him, then that wouldn't be a good enough reason. I mean, it seems like the trial judge allowed it before he knew that the juror had sleep apnea. See, I guess my question is that transcripts, to me, typically would not show the ethnicity of the juror. So we wouldn't know with respect to all these other ones that weren't mentioned here, whether they were Hispanic, not Hispanic. I mean, you know, typically that's not the case. It's the jury questionnaires that would give you information on ethnicity. For all we know, this panel was overwhelmingly Hispanic, and the prosecutor made only three challenges. We just don't have any evidence in this record. No, that's correct. But I don't think the jury questionnaires were even available to the state court. Were they in the record? No. I mean, now they weren't submitted to the state court, but I can tell you from time to time state courts look at trial court records and determine appeals. I don't believe that they were part of the trial. To my knowledge, they were not part of the record. Do we even know if the transcript's available? The transcript is supposed to be kept for ten years after the trial, and the trial was in 2003, so it should still be available. I take it you take those little references, recorded but not transcribed, to mean that a court reporter or somebody recorded the voir dire, but they just never made it into a transcript. Yes. I had a couple of questions. I noticed that the judge didn't say he had sleep apnea as an explanation. He went on to say he couldn't stay awake during the trial, so it wasn't just the fact that a lot of people have sleep apnea, and that's not a justification for not being a juror, but he went on to say for whatever reason they couldn't stay awake. That would be a legitimate reason. But I look at it more as a trial judge and try to think what would I have done if the jurors had been excused. Typically, when we have these Batson challenges, they're made at the time, and so you have a chance to investigate immediately. If they're made the day later after the jurors are gone, in a fashion that this was made, it's difficult to think what the judge should have done, especially when the trial attorney really didn't ask him to do anything. He wasn't asked to do it. There was no request for a mistrial. There was no request for anything. It's just something we're kind of aware of, and he said, okay, well, I'll look at it. So I'm not sure that there was what I would consider even a Batson challenge. It was just something that was brought to the attention of everyone, and I'm not sure that the trial judge did anything different than what a good trial judge would have done under the circumstances, but maybe I'm wrong. I'm just trying to look at it from the perspective of the trial judge at the moment. Difficult to think. If the counsel wanted to do more than he did, the counsel certainly had the ability to ask for it. Yes, and Mr. Barnes also complains on a lot of different levels about the ineffectiveness of his counsel, who was later charged with misconduct and resigned from the bar. And, yes, I can see the panel's concern with whether or not a Batson challenge was actually raised, but our position is that what he said was enough. Given the judge's response that he didn't need to do more, that's your position? Well, yeah, because the judge said, you know what? You guys are just trying to make appellate issues, and I'm not even going to ask the prosecution to justify its strikes, and I'm not finding a premeditation case. And the prosecutor's Hispanic himself, he did make that comment, didn't he? Yes, the judge did say that, but that's not, I don't think that's my opinion. I understand, I understand. Thank you for taking over your time. We'll give you a couple minutes. Okay, thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. May it please the Court, Arlene Sovedal on behalf of Respondent. Could you do the same thing we asked of the counsel? Could you just pull the microphone a little closer? Thank you. Sorry, we're short. If you're tall, you would have had an opposite problem. Your Honors, I will just address the Batson issue. While statistical factors such as the high rate of striking Hispanic jurors or strikes against prospective Hispanic jurors can establish a pattern of discrimination based on race, Barnes here fails to allege sufficient facts, and it is his burden to allege sufficient facts, and the record does not disclose facts such as, as Your Honors has pointed out, how many Hispanics actually sat on the jury, how many Hispanics were in the jury veneer, how many actual Hispanics were actually struck. It's really unclear. Counsel's observations were very equivocal. One counsel said there were six, and then the other counsel said here are five, and then the trial court said, no, that one isn't even Hispanic. It doesn't appear Hispanic to him. It doesn't appear Hispanic. So to find a statistical disparity, we would need to know a numerator and a denominator, and we don't know either. So take the facts given by the trial court judge who says, I think under the trial judge's calculation, there were strikes by the state on two or three Hispanics out of the five identified by the defendant as the only Hispanics there. What they basically say is what occurred yesterday is all the Hispanics got struck. I think there were seven, and the state struck six. And the judge says, give me facts. And when they give him facts, they can only identify five, and the state struck three. And maybe one of them was Hispanic and maybe one of them wasn't. Unfortunately, making the numbers lower hurts your statistical side of the case. But don't we at least have on its face a 50 percent, at least a 50 percent strike rate of Hispanics on one day? Well, not necessarily because counsel was very equivocal as to who was Hispanic and who wasn't. We're not really sure. I mean, the trial court already said no, one of them was not. To him, did not appear Hispanic. So we're not really sure, and they were just using perhaps Hispanic surnames, so we're not really positive how many were actually Hispanic. I guess my question is a little bit different, and I realize nobody raised a badge in the direction of the judge at the time, so that's a separate problem. But if on a day in trial all the Hispanics on a veneer are peremptorily excused at the request of the state, and the judge may find it for cause and the judge may find the other ones peremptory, should the judge under those circumstances at least say to the defense counsel, tell me why? I'm seeing a pattern here. Tell me why. Give me a reason why. Sorry. It's possible, but in this case that wasn't the situation. Here the trial court is in the best position to judge the credibility and demeanor of the witnesses and to look at the jury and the composition of the jury. And here the trial judge was like, no, there is no prima facie case. You have not presented enough evidence of a prima facie case. Can you do it on statistics alone? Yes, you can do it on statistics alone. However, you don't just look at it at the time it was made. You need to look at it underway versus their own throughout the whole trial. And here we don't know that because this was just the first panel, and the trial court said, look, another panel is coming in. We don't know how many Hispanics are on that panel. We don't know how many panels there were, and we don't know who actually sat on the jury. Just so that I understand, was this the second day of jury selection that these objections related to, or were they making them on the second day related to the first day? I can't tell that from the first day. I can't really tell. I believed it was on the first day, and the objection was on the second day. Obviously, at least one day of jury selection had ended. This was the next day. They were coming back to court and saying, on the way home, we had these observations, Judge, and we want to bring them to your attention. What I can't tell is whether or not this observation is about the first day of jury selection or the second day. The other thing I can't tell from this record, and maybe you can help me about, is was the day that was then going to ensue after this colloquy a day of picking alternates, or were they finishing the main jury and also dealing with alternates? I believe they were still picking the main jury because the trial court says – To have an initial conversation about how many preemptories they have for alternates. Right. And then he says at the end, I will further note that we have a brand new panel coming to start today, and I'll see if the trend continues, and if it does, we'll review the issue. And no one ever brought the issue up again. Let's go back for a second. Let's assume you're on the first day of jury selection, and the state challenges the first seven Hispanics in the veneer. Doesn't the judge have an obligation at that point, if confronted with a Batson objection, to go through the three-step analysis rather than say, well, there's lots of other Hispanics out there, let's wait and see what you do with them? Here that wasn't the case. The first one that they identified was dismissed based on stipulation. One was appeared not Hispanic to the trial court and also lied to the trial court. That's the same person. Yes, I believe that's the same person. So I take it there are three. And as to those two, the Batson challenges or Wheeler challenges, if you will, are quickly dropped by the defendants. The judge says, you're not making a Wheeler claim as to that person, and they say no. So we're left with three. Three, two or three, I believe. Well, they identified five, and we've eliminated two. I didn't major in math, but I think it's three. It doesn't necessarily raise an inference of discrimination. You have to look at the totality of the circumstances, which the trial court did here. The trial court noted that neither defendant was Hispanic and the prosecutor himself was Hispanic. Are either of those relevant to the calculation? You need to look at the totality of circumstances. No, I know. It's not relevant to the statistical disparity. Is it relevant to the Batson analysis at all? I believe it is because the Batson standard is you have to look at the totality of circumstances to see whether the defendant has raised an inference of discrimination, and that all is relevant. Why does the defendant's race have anything to do with the Batson analysis? It's not dispositive, but it's something to look at. Why? Because you have to look. The defendant has a right to a jury composition that's not the result of discrimination, regardless of his or her own race, right? Yes. An exclusion of one jury based on racial discrimination, of course, is improper. So it doesn't matter what the race is of the prosecutor or the defendant for a Batson analysis, does it? You just have to look at it as a totality of circumstance, and that would be something you could look at. Yes, and that's what I'm resisting. I mean, I understand one looks at the totality of the circumstances, but I thought the case law made rather clear that the race of the prosecutor we could take separately, but the race of the defendant is completely irrelevant to the determination of a Batson challenge. Isn't that correct? It's not necessary under powers. No, I'm asking, you think it's a relevant consideration that a judge in balancing the circumstances with two identically situated defendants can say, well, these circumstances weigh more in favor of the defendant because the defendant is a Hispanic, but in the other case, it weighs less in the defendant's favor because he's not a Hispanic. I think it's an issue that you need to consider. I'm not saying that it's – I think I disagree, but I wanted to make sure it was your position. So let me ask you this separate question. Assuming for the sake of argument that the petitioner has made a proper request for a transcript when he made a request for all materials, why doesn't Boyd dictate that we send this back? Here the defendant did not ask for transcripts. I said assuming. Assuming. That's a separate question. Boyd is distinguishable because in Boyd he raised a claim on direct appeal and the record was developed and there was a transcript and he requested the transcript several times and the court said, no, you can't have the transcript, and here it was never requested. Right, but I said assuming that it was requested. Well, just because Barnes raised – We'll get to whether or not he properly requested an amendment, but I mean assuming that he properly requested the transcript, didn't get one, why wouldn't Boyd control this case? Well, under Boyd in this circuit, yes, it would control, but it's distinguishable. The question is then whether or not his request for materials was truly a request for the transcript. I don't believe it was. He never asked for the transcripts in the California Supreme Court in his petition for writ of habeas corpus, and just because you raised the issue does not necessarily mean that he's asking for the transcript. It's his burden to develop the facts to support his constitutional violation, and here he did not. He didn't do it in the trial court nor in habeas. Okay, thank you. The other thing about Boyd, though, is that the language used in Boyd would seem to indicate that, at least the Boyd panel thought that you can't even analyze a Batson claim without a transcript, and that's where the error was. I'm not sure that Boyd can be distinguished on his failure to ask for a transcript or not. I haven't decided on that. Here we have a transcript, a limited one, and we don't know if there is a statistical disparity because we don't know how many Hispanics were actually left on the jury or how many were on the panel at the time or really how many the prosecutor struck. Where was the request for records made? My understanding is it was made in a superior court proceeding. Yes, I believe so. Which what proceeding was that? You know, I am not sure, Your Honor. I don't recall him even making that at all, just what counsel has represented in court today. I recall from the record that some request was made. I don't know whether it was in connection with the trial. No. Or in connection with a subsequent post-conviction review proceeding. I'm pretty sure it was not made during the trial. On direct appeal, the only issue he raised was a sentencing issue, and the only time, the first time he raised this Batson issue was in his collateral proceedings. In the state supreme court? Yes. So I don't believe that. That's an original petition to the court? Yes. And do you agree that we have to treat that claim as exhausted for federal habeas purposes because of the postcard denial? Yes, I believe so. The supreme court really could have, as you have noted, could have denied that claim based on procedural grounds, but they didn't. I was going to ask, under California law, as I recall, if you don't raise a claim on direct appeal, you may be barred from raising it on habeas. That's correct, Your Honor. If you could have raised it on direct appeal. That's correct. And also, because he didn't object to the Batson issue at the time, it could also be procedural barred. And we don't know why the California supreme court did it, but it would have had good reasons to do it on those grounds had it explained to us what it was doing. Yes, Your Honor. And as Your Honors noted, there was no real Wheeler or Batson objection at the time of trial, and under Haney v. Adams, therefore, this issue is not cognizable on federal habeas because he did not really make an objection at the trial court. Well, I think the best argument for the other side is that the word Wheeler was used and the judge ruled on it. So why isn't that enough? I mean, he says, I'm not going to require the prosecutor to provide me the reasons. I believe, as Your Honor noted earlier, it just seemed to be an observation by counsel. Counsel just said, I'd like to make a Wheeler-type situation known to the court. But then the court responds and says, it didn't use the words prima facie, but the court says, I'm not going to make the prosecutor respond, which would indicate that he's rejecting it at stage one. It would seem that the court did treat it as an objection, even though I don't believe that counsel actually did object properly. He waited until the next day, and then even when he objected, if you can call it an objection, it was very equivocal and just really an observation. And even the court's final sentence, when he says, well, we'll see if the trend continues, that seems to indicate that I'm just going to note noted, I know that you've noticed this pattern and we'll see what happens. So that's not necessarily acting on a motion or an objection. Anything further? Okay. Thank you for your work. Thank you, Your Honor. I just wanted to respond to a couple of things. The motion for the records was made in the California Superior Court, and you can find it at Volume 6, ER 1279. I'm sorry, Volume 6? ER 1279. And that was in a post-conviction review procedure? It's not clear. It's part of his California habeas petition to the Supreme Court that was filed June 26, 2006, and he lists what he's done. And one of them was he filed a motion in the California Superior Court for all records, all trial records, exhibits, and evidence. Is that a different habeas petition than the one we're dealing with now, or the same one? I think all of the Supreme Court, he may have raised it in all of his California Supreme Court habeas petitions, but I think a group of them were denied in one postcard denial. But he also wrote down that this motion was denied in August of 2005, so it would have been after the trial. It was when he was focusing on his sentence appeal at that time. Yeah, it may have been a little bit after. I'm not sure. Yes, but it was around then. And as to counsel's point that it was Barnes's burden, you know, as I mentioned already, he pointed out the statistical disparity to the state court, which was enough to establish the Prima Facie case. And as this court pointed out in William V. Runnels, that petitioner, quote, having presented a statistical disparity based on the information known to him, cannot be charged prior to the prosecutor's explanation of his challenges with developing a record that might refute the prosecutor's possible explanations. So once Barnes made the Prima Facie showing, it would have been incumbent on the state courts to do the comparative analysis pursuant to Miller, Allen, Johnson, and this court's decision in Boyd, which I do think is controlling. In Boyd, the petitioner actually had more of a wide-year transcript. He had a partial transcript, but the state court wouldn't give him the entire transcript. Here, there's nothing. So if it wasn't enough in Boyd, clearly it can't be enough here. There's no way for the state court to have done a proper analysis, as dictated by Miller, Allen, Batson, and Johnson v. California, to deny Mr. Barnes' Batson claim. Thank you, counsel. Thank you. The case just argued will be submitted for decision. And we do recognize there are other issues in the case, but I think that's the issue that interests us the most for oral argument purposes. I'm sorry we didn't get a chance to explore those other issues within the time period, but don't worry, we will look at them carefully.
judges: Beistline, Thomas, Hurwitz